BOGGESS *et al.* v. BOGGESS *et al.;* YATES, *Guardian, Appellant.*

### Division Two, March 5, 1895.

1. **Equity**: PRACTICE: SUBMISSION OF ISSUES: SUPREME COURT. Inasmuch as, in an action to annul a deed on the ground of the grantor's mental incapacity, the trial court is not bound by the verdict of the jury on the issues submitted to them, but may adopt or reject it, the supreme court will consider the evidence only to ascertain whether it is sufficient to support the decree.

2. ———: RESCISSION OF DEED: MENTAL INCAPACITY. Sufficiency of evidence to justify the rescission, for mental incapacity, of a deed made by the grantor, eighty years of age, of most of his land, considered and *held* sufficient to support the decree of the trial court.

3. **Practice**: PARTIES: MULTIFARIOUSNESS. The objection of improper joinder of a grantee not interested in all the land conveyed, in an action to set aside two deeds for want of mental capacity of the grantor, can be raised only by the grantee interested in such part only of such land.

4. ———: ———: ———. The question of multifariousness in an action to set aside several deeds discussed.

5. ———: EVIDENCE: ADMISSIONS. Admissions by a grantee that when the grantor executed the deed he was mentally incapable of doing so, are admissible against such grantee in an action to rescind such deed.

6. ———: ———: ———. Where a codefendant desires to limit such evidence to the defendant making such admissions, an objection to that effect should be assigned.

7. **Supreme Court Practice**: EQUITABLE ISSUES: INSTRUCTIONS. Where, on the trial of issues submitted to the jury in an action to annul deeds to land on the ground of the mental incapacity of the grantor, the trial court instructs the jury on the law, the supreme court will examine such instructions for the purpose only of ascertaining the theory on which the court decided the cause.

VOL. 127—20

*Appeal from Ray Circuit Court.*—HON. E. J. BROADDUS,
Judge.

AFFIRMED.

*C. T. Garner & Son, J. L. Farris & Son* and *J. E.
Ball & Hamilton* for appellants.

(1) In an action in chancery, it is the duty of the
court to look into the evidence and determine from it
the rights and liabilities of the parties as to all the
matters in litigation. *Dale v. Hogan,* 39 Mo. App.
646; *Suddoth v. Bryan,* 39 Mo. App. 653. (2) Facts
essential to a right of recovery must be proved by
testimony having at least a preponderating influence.
*Moore v. Railroad,* 28 Mo. App. 622. (3) The mere
fact that a person's mind may be impaired by age or
disease does not render him incompetent to make a
conveyance, and the true legal test is "the capacity to
understand the nature and effect of the transaction."
*Cutler v. Zollinger,* 117 Mo. 92; *English v. Porter,* 109
Ill. 285; *Harvey v. Sullens,* 56 Mo. 372; 1 Parsons on
Contracts [7 Ed.], 383. (4) It is well settled that
sanity is the normal condition of the human mind. A
man twenty-one years of age is presumed to be capable
of making suitable conveyances, disposing of his prop-
erty, and he who seeks to invalidate it by alleging
insanity should prove it. 1 Redf. on Wills [3 Ed.],
ch. 3, sec. 5, sub. 13; *Taylor v. Wilburn,* 20 Mo. 306;
*Jackson v. Hardin,* 83 Mo. 182; *Frear v. Williams,* 7
Baxter, 550; *Brooks v. Barrett,* 7 Pick. 94; *Higgins v.
Carrollton,* 92 Am. Dec. 666; *Cotton v. Elmer,* 6 Am.
Rep. 703; *Grubs v. McDonald,* 91 Pa. St. 236. (5)
There is a misjoinder of the causes of action; plaintiffs
may unite in the same petition several causes of action,
only where they all arise out of the same transaction
or transactions, etc., but the cause of action so united

Boggess v. Boggess.

must affect all the parties to the action. R. S. 1889, sec. 2040. (6) The petition is also subject to the objection of being multifarious, W. V. Boggess, one of the defendants, having no interest in the matter set forth in the second count in plaintiff's petition. *Clark v. Ins. Co.*, 52 Mo. 273. (7) In equitable actions, the verdict of jury is only advisory, and the appellate court will review the testimony and decide the case according to equitable rules. *McElroy v. Maxwell*, 101 Mo. 294; *White v. Pendry*, 25 Mo. App. 542. (8) Chancery regards the infant as a privileged person, and equity will not hold the infant to strict rules of pleading, but will allow him to take advantage of any defense, whether pleaded or not. 10 American Encyclopedia of Law, 692, and authorities there cited. *Collins v. Trotter*, 81 Mo. 275.

*Lavelock, Kirkpatrick & Divelbiss* for respondents.

(1) The question of misjoinder comes too late when not raised until after the trial, and especially is this true when not raised until case is presented on appeal. *Ashley v. Winston*, 26 Mo. 210; *Solding v. Bartlett*, 35 Mo. 99; *Russell v. DeFrance*, 39 Mo. 511; *Kers v. Bell*, 44 Mo. 120; *Kate v. Menier*, 50 Mo. 158. (2) The petition is not multifarious. *Donovan v. Dunning*, 69 Mo. 436; *Bobb v. Bobb*, 76 Mo. 419; *Rinehart v. Long*, 95 Mo. 396; *Waddell v. Waddell*, 99 Mo. 347; *Vreeland v. Vreeland*, 24 Atl. Rep. 551; *State v. Foot*, 3 S. E. Rep. 546; 1 Beach on Mod. Eq. Prac., secs. 125, 129. (3) The declarations of William V. Boggess against his interest were competent in passing upon the validity of the first deed; and were by the instruction of the court limited to that deed alone. This was not error. *Schlicker v. Gordon*, 19 Mo. App. 479; *Koontz v. Coffman*, 31 Mo. App. 397;

*Philibert v. Schmidt*, 57 Mo. 212; *Babb v. Ellis*, 76 Mo. 460; *Grace v. Nesbit*, 109 Mo. *loc. cit.* 20, 21. (4) Evidence admissible for any purpose can not be excluded when the only objection made was that it was "incompetent." *Prim v. Raboteau*, 56 Mo. 407; *Shelton v. Durham*, 76 Mo. 436; *State v. Walker*, 98 Mo. *loc. cit.* 106; *Drey v. Doyle*, 99 Mo. 459; *Jamison v. Bagot*, 106 Mo. 240; *State v. Adams*, 108 Mo. 208; *Seligman v. Rogers*, 113 Mo. 642; *State v. Hunt*, 114 Mo. 66; *State v. Smith*, 114 Mo. 406. (5) The court properly defined what constitutes sufficient mental capacity. *Harvey v. Sullens*, 56 Mo. 372; *Jackson v. Hardin*, 83 Mo. 175; *Norton v. Paton*, 110 Mo. 456; *Couch v. Gentry*, 113 Mo. 248; *Maddox v. Maddox*, 114 Mo. 35; *Kerr v. Lunsford*, 31 W. Va. 659; *Converse v. Converse*, 21 Vt. 168; *Dennet v. Dennet*, 44 N. H. 531; *Young v. Stevens*, 48 N. H. 133. (6) To be valid, a deed must be delivered. To constitute a valid delivery, the dominion over the instrument must pass from the grantor, in his lifetime, with the intent that it pass to the grantee, if the latter assent to it. *Huey v. Huey*, 65 Mo. 689; *Turner v. Carpenter*, 83 Mo. 333; *Hammerslough v. Cheatham*, 84 Mo. 19; *Allen v. DeGroodt*, 105 Mo. 442; *Tyler v. Hall*, 106 Mo. 313; *Hall v. Hall*, 107 Mo. *loc. cit.* 107; *Cazaza v. Cazaza*, 92 Tenn. 573; *Reichert v. Wilhelm*, 50 N. W. Rep. (Iowa), 19. (7) The unequal disposition of the property made by the deed may be considered by the jury, in connection with all the other evidence and circumstances, in passing on the mental capacity of deceased. *Gay v. Gillilan*, 92 Mo. 250; *Knox v. Knox*, 95 Ala. 495; *Lamb v. Lamb*, 2 W. Rep. (Ill.) 698. (8) A verdict supported by substantial evidence will not be disturbed on appeal on the grounds that it is against the weight of the evidence. *Caruth v. Walters*, 91 Mo. 484; *Rothchild v.*

*Railroad*, 92 Mo. 91; *Mathias v. O'Neill*, 94 Mo. 520; *Schad v. Sharp*, 95 Mo. 575; *Taylor v. Cayce*, 97 Mo. 242; *Gordon v. Eans*, 97 Mo. 587; *Skinker v. Haagsma*, 99 Mo. 208; *Sayer v. Devore*, 99 Mo. 437; *Rawlins v. Rawlins*, 102 Mo. 563.   (9) William V. Boggess being the only party who could raise the question of misjoinder, and he having accepted the judgment of the trial court, the question can not be considered on appeal of other defendants.  1 Beach on Mod. Eq. Prac., secs. 80, 127; Bliss on Code Pleading, secs. 414, 415; *Nearen v. Bakewell*, 110 Mo. 645.   (10) The appellate court will not review the evidence in an equity case, unless all the evidence heard at the trial is preserved and presented in the abstract.  *Foster v. Nowlin*, 4 Mo. 18; *Knox v. Sikers*, 15 Mo. 235; *Douglass v. Stephens*, 18 Mo. 362; *Carter v. Holman*, 60 Mo. 498; *John v. Long*, 72 Mo. 211; *Blount v. Spratt*, 113 Mo. 34; *Roberts v. Bartlett*, 26 Mo. App. 611; *Sleet v. Gilmore*, 28 Mo. App. 655; *Singer Mfg. Co. v. Givens*, 35 Mo. App. 602; Rule 7, Supreme Court.

GANTT, P. J.—This suit was instituted in the circuit court of Ray county on the fifteenth day of December, 1891, by the heirs at law of Henry Boggess, deceased, to set aside two warranty deeds executed by said Henry Boggess in his lifetime.

The first of these deeds was dated May 24, 1889, and purported to convey about one hundred and ninety acres of land to his son William Vincent for life, remainder in fee to his two children, Henry P. and James K. Boggess; the second deed was dated on May 26, 1890, and purported to convey seventy-two acres of land to said Henry P. and James K. Boggess in fee simple.  Henry Boggess died on the seventh day of August, 1891.  At the date of the first deed Henry Boggess also conveyed to a grandson, Eli Frazier, forty

acres of land. These three deeds conveyed all the lands he owned, except one hundred and sixty-three acres of timbered land. The lands in suit are well worth $40 per acre and the timbered land $20 an acre.

When the above deeds were made, Henry Boggess had four children living, to wit: Wade Boggess, Sallie Graham, Nancy Mulnix and William V. Boggess, and the following grandchildren, to wit: Alice Boggess, only child of Argyl T. Boggess, a deceased son; Eli Frazier and William H. Frazier, only children of Margaret Frazier, a deceased daughter; Price Boggess, William Boggess and Charles Boggess, only children of Joel Boggess, a deceased son, and the two defendants, Henry P. and James K. Boggess, sons of W. V. Boggess.

The petition of plaintiffs, in the first count thereof, contains the following averment: "That at the time the said Henry Boggess undertook and attempted to execute said deed and convey the premises hereinbefore described to said defendants, he was advanced in years, being then about eighty-five years old, in feeble health, with greatly impaired physical and mental vigor, weak in mind and body, suffered from loss of memory and incapable of transacting his business and of comprehending the extent of his property and appreciating the rights of those having claims upon his bounty; and by reason of his advanced age and infirmity of body and impairment of mind he had not sufficient mental capacity to make a valid deed, and the deed therefore made, though in form and duly signed, acknowledged and delivered, is not the deed of said Henry Boggess, deceased, and is without consideration, invalid and insufficient to pass title in the property attempted to be conveyed from said Henry Boggess to said defendants."

The second count in the petition for setting aside

the second deed contains substantially the same allegations, as to mental incapacity, and further seeks to have said deed canceled for the reason it was not delivered.

It is also alleged in the petition that the real estate attempted to be conveyed by said two deeds was worth about $11,000, and by such transfers, if valid, he would thereby leave some of his children almost wholly unprovided for.

The minor defendants were duly served and Dr. William F. Yates was appointed guardian *ad litem.*

The circuit court submitted the following issues of fact to a jury.

"1. Did Henry Boggess, at the time of the execution of the deed signed by him, dated May 24, 1889, being the deed in controversy under the first count of the petition, have sufficient mental capacity to make said deed?

"2. Did Henry Boggess in his life time make a delivery to Henry P. Boggess and James K. Boggess, or to any one for them, of the deed dated May 26, 1890, signed by Henry Boggess, being the deed in controversy under second count in the petition?

"3. If the jury find that the deed dated May 26, 1890, and signed by Henry Boggess, was delivered to Henry P. Boggess and James K. Boggess, or to some one for them, the jury will further answer whether at the date of such delivery the said Henry Boggess had sufficient mental capacity to make said deed?"

And for their guidance gave them the following instructions:

"1. The court instructs the jury that the issues submitted under the first count in the plaintiffs' petition, is whether on the twenty-fourth day of May, 1889, Henry Boggess was of sufficiently sound mind to

render him capable of making the deed read in evidence of that date.

"2. The issue submitted to the jury, under the second count in the petition of the plaintiffs, is, *first*, was the deed read in evidence, dated may 26, 1890, delivered by Henry Boggess to the defendants, Henry P. Boggess or James K. Boggess or to any person for them? *second*, was or was not Henry Boggess of sufficiently sound mind to render him capable of making the deed read in evidence of that date? If the jury find that said deed dated May 26, 1890, was not delivered to either the grantees therein named nor to any person for them, then it will not be necessary to pass upon the mental capacity of Henry Boggess to execute the same at the date thereof, but if said deed was delivered within the meaning of the law as declared in these instructions, then, and in that event, the jury must pass on his mental capacity to make such deed on the twenty-sixth day of May, 1890.

"3. The jury are instructed that, to incapacitate a party from making a contract or execute a deed, it is not necessary to establish the existence of insanity in such a person, in its technical meaning, but they are instructed that weakness of intellect from extreme old age, or when the same arises from great bodily infirmity, which disqualifies the party from knowing or appreciating the nature, effect or consequence of the act he is engaged in, works such a disability as to render such a contract or deed void and of no effect in law.

"4. The declarations of Henry Boggess, either before or after making the deeds in controversy, are evidence before the jury, in so far as they may throw light upon the mental condition of Henry Boggess or his feelings or affections, but they are not evidence of the truth of the matters he states; they are admitted

as external manifestations of the condition of his affections and feelings.

"5.    The jury are the judges of the credibility of the witnesses, and of the weight to be given to their testimony.    In weighing the evidence, the jury should take into consideration the manner of each witness upon the stand, his relations to the case as an interested party, or otherwise, his feelings of relationship toward any party to the case, his capacity and opportunities for observing and forming an opinion, the probability or improbability of his evidence under all the evidence and surroundings, and should give to the testimony of each witness such weight as, in their judgment, it is entitled to under all the facts and circumstances in the evidence.

"6.    Upon the question of whether the deed dated May 26, 1890, was delivered or not, the court instructs the jury:    A delivery of a deed must be made to the grantee, or to some one for the grantee, in the lifetime of the grantor, and is complete when the grantor parts with the dominion or control over the deed with the intention that it shall take effect as his deed in favor of the grantee, and the grantee or someone for him, accepts the deed, or assumes the dominion or control over it.

"7.    When the deed is turned, by the grantor, over to a third person for the grantee, then, to constitute a delivery, the grantor must turn it over to such third person with the intent that it shall take effect in favor of the grantee, and must part with the dominion or control over the deed, and the third person receiving the deed must hold it for the grantee, and beyond the right or control of the grantor.

"8.    Where a deed is signed and acknowledged by the grantor, and is deposited by the grantor in some place to which the grantee has access, and from which

the grantee may take possession of the deed, with the intent on the part of the grantor that the grantee may, after the grantor's death, take the deed, this does not constitute a delivery of the deed; in such case no delivery of the deed has taken place in the lifetime of the grantor.

"9.   There can not, under any circumstances, be a delivery of a deed as long as the grantor retains any dominion or control over the deed, but where he has parted with all dominion or control over the deed in favor of the grantee, and the grantee, or someone for him, has assumed dominion or control over the deed, then the delivery is complete, and the fact that the deed may afterward get back into the possession of the grantor does not, in such case, alter the fact that a legal delivery has been made.

"10.   Upon the question as to the mental capacity required in order to execute a valid deed, the court instructs the jury that a person who has sufficient capacity to understand the nature and character of the act he is performing, and to understand the extent and value of his property, and the situation of those who have claims upon his bounty, has capacity sufficient to make a deed.

"11.   The fact that a parent by his deed may make an unequal distribution of his property does not of itself invalidate a deed, but this fact may be considered in passing on the mental capacity, in connection with all the other evidence and surroundings.

"12.   Mental capacity or incapacity need not be proved by direct testimony; but, from all the evidence, facts and circumstances, including the opinions of witnesses, the jury will determine as a matter of fact whether or not Henry Boggess, deceased, at the several dates in controversy, had the mental capacity to make the said deeds, the jury are not bound to accept the

opinions of any witness, but they will give the opinions of all the witnesses such weight as, under all the surroundings, they think they are entitled to.

"13. The burden is upon the plaintiffs to establish the incapacity of Henry Boggess to make a deed by a preponderance of testimony.

"14. Any acts or declarations of William V. Boggess in the way of admissions against interest, may be considered by the jury in passing upon the question of mental capacity of Henry Boggess, deceased, to make the deed dated May 24, 1889; but such acts or declarations of said William V. Boggess in the way of admissions against his interest, can not be considered by the jury in passing upon the issues submitted with reference to the deed dated May 26, 1890; the said William V. Boggess not being a party to said deed.

"15. The opinion of an ordinary or nonexpert witness, as to the mental capacity of Henry Boggess to execute the deed in controversy, is admissible in evidence, when the facts or transactions on which such opinion is based have been detailed in evidence by that witness, but the jury are not required to accept the opinion of such witness, but may take into consideration the facts or transactions detailed by him or her, on which his or her opinion is based, and give to it such weight as in their judgment it is entitled to."

To the giving of which instructions the defendants then and there duly excepted.

The jury responded to the issues of facts as above submitted as follows: To first issue, "No;" to second issue, "No;" and no answer to the third issue. And the jury also returned into court the following general verdict, to wit: "We the jury, find for the plaintiffs. H. C. McClure, foreman."

The court adopted the findings of the jury and entered a decree for plaintiffs setting aside both deeds.

After ineffectual motions for new trial and in arrest of judgment, W. F. Yates, guardian *ad litem* for said minor defendants appealed to this court. Defendant William V. Boggess did not appeal. Numerous errors are assigned for reversal of the judgment of the circuit court.

I. It is insisted that the verdict of the jury was not supported by substantial evidence. As the circuit court was not bound by the verdict of the jury but might adopt or reject it accordingly as it conformed to or varied from its own judgment, it will be necessary only to consider whether the evidence is sufficient to support a decree by the court independent of the action of the jury.

The evidence tends to show that Henry Boggess was a thrifty, energetic man; that, besides supporting his family, he had amassed some $15,000. He seems at all times to have had a strong attachment for his children and especially so of the children of his deceased sons and daughters. But if the testimony of his children and others who transacted business with him is to be credited by us, as it unquestionably was by the jury and the circuit judge who tried the cause, a marked and noticeable change came over him in the last years of his life in regard to his memory. He could not remember current events and several times failed to recognize his own daughters, and, from having been a prudent man, was very careless in business matters.

The defendant William Vincent Boggess and Argyl Boggess were his youngest children and were twins. Argyl died in January, 1887.

The old gentleman became a great sufferer from rheumatism and for several years rarely left his home, and required constant attention. Dr. Yates testified that the old gentleman died "not from any particular disease; it seems to be a giving way of all the vital

parts." He was about eighty-five years old at his death.

Mrs. Frazier, a neighbor lady, living only a mile distant, who had known him intimately for thirty years, visited him soon after the first deed in question was made; she was in his company from 9 o'clock in the morning until two o'clock in the afternoon; she noticed he was very feeble and his memory was not so good as formerly; he told her he could not remember well; he would try to tell something and leave the subject unfinished; after dinner, which was about 2 o'clock, she learned that Mr. Boggess did not know her, and on returning to his room the subject was introduced and he said: "I thought I knew you this morning, but when I heard you talk at dinner, *I took up an idea it was your mother.*" *He never knew her mother.* He spoke to her that day about the deeds he had made and said he had deeded away all of his land, except the timber land down on the creek, which he said was *four hundred acres.* This tract only contained one hundred and sixty-three acres.

At times he remembered making the deeds, but did not seem to attach much importance to them, for in the fall of 1890 he told William Boggess, a grandson, if he would come and live with him he would tear up the deeds he had made and deed the land to him. In 1888 or 1889, he insisted to Mr. McGinnis that Mrs. Williams was a sister of his wife. She was a niece of his wife—a fact formerly well known to him. In 1889, or 1890, he forgot all about a note for $117 he held on Thomas Frazier, and when Jackson Frazier went to pay it off he declared that he did not have such a note, and when it was found he said: "I don't have any recollection of Tom getting any money from me." When the money was counted out to him by Jackson Frazier, he declined to receive it, and said: "I don't.

know anything about it; I don't want to receive this money to-day, because I can not count anything, and I would be just as liable to give you somebody else's note as to give you Tom's." It was with difficulty he was prevailed upon to receive the money and to give up the note. After receiving the money, he had laid it down on a lounge in his room and left it, and soon forgot what he had done with it. In June, 1890, Mr. Frazier had a settlement with him, and paid him some money his son Henry owed him; he at first insisted there was more than one note, and after diligent search none was found, and when Mr. Frazier asked for a receipt he contended that Mr. Frazier was not the one to hold the receipt, that he should have it.

In 1888 or 1889, Geo. W. Keyes, who had known Mr. Boggess intimately since 1866, and had lived in a mile of him, and had had many business transactions with him previous to that time, went to his house and Mr. Boggess did not recognize him. In the fall of 1888, T. M. Jones, who had known Mr. Boggess intimately since 1865, met him in Richmond, and he did not know him. Mr. Jones said: "No, sir; he did not recognize me; not only that, I could not get him to recognize me by telling him who I was; did not appear he ever did know me at that time; he always had recognized me before." In the spring of 1888, Mrs. Mulnix, his daughter, went to see him, and he failed to recognize her; she had her two youngest children with her and he insisted that they did not look like her children, did not know them at all. It had not been more than two months since he had seen them last. In June of the same year Mrs. Mulnix went to see him again, and found him alone lying on the lounge. She said: "Well, he did not seem to know me that time until I spoke to him. After I talked to him awhile, then he recognized me." In 1889 or 1890, Mrs. Mulnix went

to see him with her daughter, Mrs. Painter, who had lived with him from 1885 to 1887. He did not know either of them, but after ten or fifteen minutes he recognized his daughter, Mrs. Mulnix, first, and after a while recognized his granddaughter; and again, in 1891, he failed to recognize Mrs. Mulnix when she visited him.

In 1890, his daughter, Mrs. Graham, visited him and he failed to recognize her. In 1888 he promised to give Mrs. Graham $300 to repair her house, and after she had returned home he thought he had given it to her, and charged it up against her in his book. And the next time she came to see him, he asked her if he had given it to her, and explained that he had entered it up against her. This money was never given his daughter, but sometimes he was satisfied it had been paid her and at another time he would say it had not. In former years he was well informed as to the value of stock, but the last years of his life he had but little idea as to the value of such property. In the fall of 1890 someone wanted to buy a mule from him, and he asked $200, and the next day he remarked that he ought to have sold it, as the mule was not worth more than $90. The other entries in his books made about this time were no more reliable or intelligent than this one.

He had not been able to give his property to the assessor for five or six years before his death on account of his inability to remember what stock, money and notes he had. He would make mistakes about the number and amount of his notes, and could not give any reliable information as to the amount of money he had deposited in the bank. On one occasion, about the date of the last deed in question, he ordered his grandson, Eli Frazier, to move off the farm known as the Argyl Boggess place. His reason for the demand was childish; at first he was persistent, yet when Mr.

Frazier was disposed to humor him, and let him have his own way, he soon became reconciled, and in less than an hour before the time he began to press the demand he told Mr. Frazier he need not move away at all, that he did not want the place.

These are only a few of the incidents in evidence to show his want of capacity to manage his affairs.

All of his business was transacted for three or four years previous to his death by his son Vincent, and he often told his children that he could not attend to his business matters any more.

The evidence for the plaintiffs tends further to show that when Mr. Deacy went to his house on the twenty-fourth day of May, 1889, to write the first deed in question, he was then a very feeble and childish old man, bearing all the evidences of mental and physical decay. He was petulent and persistent in all his plans, and would listen to no suggestions from others. He repeatedly told Mr. Deacy on that occasion that he had worked hard for what property he had and wanted his children to have the benefit of it, yet he was then attempting to deed it away from them, and when Mr. Deacy suggested that Vincent might have other children to whom he would feel just as much attached as Paris (Henry P.) and Kirby (James R.), the grantees in the deeds in suit, he remarked that Vincent would not have any more children; yet he saw Vincent's wife every day, she was living in the house with him and was there that day. Her child was born in a little over two months from that time, but this man of such experience thought there would be no more children.

His subsequent conversations disclosed whether he understood this deed and remembered what transpired. In February, 1890, his daughter, Mrs. Graham, visited him, and, in a conversation about the deed, she asked him why he cut John out (that was the child born after

the deed was made). He replied, "I made it so John would come in; it is to Vincent and his heirs." Mrs. Graham told him she understood that Paris and Kirby would get the land; but he said no, he knew better. In the spring of 1890 he told Mrs. Mulnix he had not made this deed, and when she said Vincent and Eli Frazier had told her, he said it was no such thing.

Three deeds were made May 24, 1889, the one described in the first count of the petition, the Eli Frazier deed, and a deed to Alice Boggess for seventy-two acres of land described in the second count in the petition. Two or three weeks after this he told Dr. Yates what he had done. It seems in 1873, he told Dr. Yates he intended to deed the land north of the branch to Argyl—that is the seventy-two acre tract—and the home place he would give to Vincent, excepting forty acres which he intended for Eli Frazier. The last conversation was in June, 1889, and according to Dr. Yates the exact words of Mr. Boggess were: "I made them deeds two or three weeks ago, as I told you in 1873 I would." Alice, Paris and Kirby had all been born since that time, and Argyl had died, the home place was to be deeded to Vincent—nothing said about giving it to him for life—none of them were made as he said they had been, except the deed to Eli Frazier, yet he thought they had been made as he told Dr. Yates in 1873 they would be.

It seems he had no clear conception of just how the deeds were made, and it is exceedingly difficult to discover from the evidence just how many deeds he did make to this land. At times he would say they were not to be delivered until after his death, then soon he would change his mind, the deeds must be delivered and recorded, and then he would change his mind and destroy them. He promised Argyl on his deathbed

that his daughter Alice should have the seventy-two acre farm, and he made one or two deeds to her for it, but they were destroyed, and nothing appears to have been given that child, who had the strongest possible claim on him, in lieu of a $3,000 farm. He told Mrs. Mulnix that after he had made the deed to Alice ''the children put at him and persuaded him to alter them and he concluded to tear them up and to give Alice $200.''

The condition of his mind was a subject frequently discussed by his children during the last three years of his life. They all agreed that on account of his physical infirmities, he could no longer get about and see to his affairs, and they were then just as positive that his mind had so far given way as to render him incapable of attending to his business. It seems the appointment of a guardian for him was talked about more than once, but, out of consideration for his feelings, nothing was done.

On the other hand there was much evidence that he was a man of good business capacity, for one of his age, up to a short time prior to his death, and knew what he was doing. Upon this point this court can not with confidence determine that the preponderance of this evidence is against plaintiffs. So far as we can discern from the record these witnesses are all alike credible, respectable men and women.

Under these circumstances this court must and should defer largely to the trial court. Cases of this character, cases in which the weight to be accorded to the different witnesses must largely determine the issue, have evoked from this court the rule that it would defer in such matters to the trial court. It is peculiarly appropriate that we should do so, unless the record presents some very convincing reason for varying from this usual course.

We do not abdicate our jurisdiction to review chancery cases on appeal; but where it is a contest involving credibility alone, and the finding is dependent upon the appearance, demeanor and character of the witnesses we think it safest to leave that to the tribunal which has the exceptional advantage of observing all those things which tend to induce belief. *Mathias v. O'Neill*, 94 Mo. 529; *Dailey v. Dailey*, 125 Mo. 96.

We think there was much substantial evidence to sustain the finding of the jury and the circuit court.

II. Having reached the conclusion that there was sufficient evidence to sustain the decree, we proceed to consider the specific assignments of error.

The first is that there is a misjoinder of actions, in this, that plaintiffs have joined one count to set aside a deed made to William Vincent Boggess for life and his two sons in remainder to one tract of land, with another count which seeks to set aside a deed to the two sons of William Vincent Boggess alone, to another tract. This point of misjoinder was not raised in the circuit court by demurrer or answer nor by the motion in arrest or for new trial.

As William Vincent Boggess has not appealed, we will consider first whether there is a misjoinder so far as the appellants are concerned. Each count seeks to set aside a deed made by Henry Boggess; each deed conveys portions of his land to the two defendants now appealing; each count alleges the same ground for setting aside the deeds, to wit, because the grantor was so old, feeble in health and impaired in mind and body, that he was incapable of transacting business, and had not sufficient mental capacity to make a deed. The heirs at law of this alleged infirm grantor are the plaintiffs in each count.

That the two grantees now appealing bear the same relation to plaintiffs as to each tract is apparent.

That the cause of action against them has one common origin, to wit, his mental incapacity to make any deed, is also clear. But, say defendants, while it is true that the plaintiffs, as heirs of Henry Boggess, are as much entitled to both tracts as one; that their claim to either is based upon the mental incapacity of the same grantor, still in one of the deeds a life estate was granted to our father, and he had no interest whatever in the other tract. If so, then the only party who could raise the question of misjoinder was their father, who was interested in only one tract and not defendants who were joint grantees of both tracts. 1 Beach on Modern Equity Practice, secs. 80, 127; Bliss on Code Pleading [3 Ed.], sec. 414, 415. As William V. Boggess is not appealing, that question does not properly arise on this appeal. *Paddock v. Somes*, 102 Mo. *loc. cit.* 235, and cases cited.

That the bill is not multifarious as to these two defendants now appealing, we think is very clear by our own adjudications. In *Tucker v. Tucker*, 29 Mo. 350, it was held that, when a husband, in anticipation of death and with a view to deprive his widow of her dower, executed as a part of the same transaction separate deeds of gift of his slaves to his children, a petition instituted by the widow against all of the grantees in said deeds to obtain an annulment thereof and an assignment of dower would not be multifarious because of defendant's distinct interests under their several deeds. In *Donovan v. Dunning*, 69 Mo. 436, a suit in equity was brought to set aside four deeds executed at different dates, by a fraudulent grantor to his children, and the bill was held not multifarious. These cases were followed and approved in *Bobb v. Bobb*, 76 Mo. 422. See, also, *Vreeland v. Vreeland*, 24 Atl. Rep. (N. J.) 551.

Where the wrong or fraud conducing to the different deeds is the same, and applies alike to all, the bill is not multifarious.

III.   William V. Boggess had lived with his father for several years prior to the execution of either of these deeds and had charge of his business to a large extent. Different witnesses were introduced who testified that William V. Boggess had stated for several years that his father was incapable of transacting ordinary business; that he did not consider the deeds that his father made to him and Eli Frazier were worth recording.   When these admissions of William Vincent Boggess, who took a life estate under one of the deeds, were offered, defendants objected because the evidence was incompetent, assigning no reasons.   That Vincent's admissions of his father's incapacity when he made the deed to him were competent as against him, can not be doubted. That the court only received them for that purpose is clearly indicated by his instruction limiting them as an admission against his interest in the deed to which he was a party, and not to be considered at all with reference to the other deed.   Moreover, the objection was entirely too general.   If defendants desired it limited to William Vincent Boggess, the objection should have been so framed.   *Grace v. Nesbitt*, 109 Mo. 9; *Babb v. Ellis*, 76 Mo. 460; *Schlicker v. Gordon*, 19 Mo. App. 479.

IV.   In the motion for new trial it is insisted the court erred in its instructions to the jury, but inasmuch as the court simply called the jury to its aid and was not bound by its verdict, we have looked to these instructions only for the purpose of ascertaining the theory upon which the court decided the cause.   The learned counsel for appellants have not pointed out the error in any particular instruction, and from their brief we can only infer that they claim that the court erred in laying down a test by which the capacity of

Henry Boggess to make the deeds in question should be determined. The instructions on this point were as follows:

"3. The jury are instructed that to incapacitate a party from making a contract or executing a deed, it is not necessary to establish the existence of insanity in such a person, in its technical meaning, but they are instructed that weakness of intellect from extreme old age, or when the same arises from great bodily infirmity which disqualifies the party from knowing or appreciating the nature, effect or consequence of the act he is engaged in, works such a disability as to render such a contract or deed void and of no effect in law."

"10. Upon the question as to the mental capacity required in order to execute a valid deed, the court instructs the jury that a person who has sufficient capacity to understand the nature and character of the act he is performing, and to understand the extent and value of his property and the situation of those who have claims upon his bounty, has capacity sufficient to make a deed."

Counsel, in their brief, say the true test is "the capacity to understand the nature and effect of the transaction." We think the court required the jury to apply the test approved by counsel for defendants.

Under these instructions the jury found that Henry Boggess had not this capacity when he executed the deed of May 24, 1889, and that he never delivered the deed executed May 26, 1890, and the circuit court, who heard the evidence and saw the witnesses, approved the finding. If the jury and judge credited plaintiff's witnesses, there was ample evidence upon which to base their finding.

No objection is made to the declaration as to the essentials of a good delivery, nor could there be. It was in harmony with many decisions of this court.

We have kept in view the equitable principle that courts of equity should act with all the solicitude of a parent over the person and property of infants that come within their authority, but we have been unable to find any error prejudicial to these minors in these proceedings. The guardian *ad litem* has shown a most commendable spirit in the zeal he has displayed in their behalf. His example should be followed by all who assume to act for minors. He has employed able and eloquent counsel, who have left no stone unturned to maintain the rights of the defendants. We discover nothing in the rulings of the court that deprived them of any right secured by law. The question was one of fact. Many witnesses were examined, and, as we have said, their testimony seems to be truthful and subject to no just criticism. The court and jury, with an understanding of it all, found againt defendants, and we affirm the judgment. All of this division concur.