## CLARISSA E. GOODMAN et al., Plaintiffs in Error, v. JAMES E. GRIFFITH et al.

### Division One, December 23, 1911.

1. **TESTIMONY: Held Incompetent: Equity: Review on Appeal.** Where it is evident from an examination of the record that the chancellor held the testimony of the lawyer who drew testatrix's will, as to information received by him from her at the time he drew it and as to what then occurred, to be privileged and incompetent, that ruling, made on 'behalf of appellant, will not be reviewed on appeal.

2. ————: **Consideration for Deed: One Dollar: Undue Influence: Deceased Grantor's Reasons.** In a suit to set aside the deed of a deceased grantor to her son, testimony that said son had done much for her in the way of looking after her and her business matters for a long series of years, and that she said, after she became possessed of a large estate, that she was now in position to repay said son for his trouble and expected to do so, was competent, for two reasons: First, because the petition charged that the deed was the result of undue influence exerted over her by the son, and it was competent upon that issue; and, second, the deed recited a consideration of "one dollar and other good and valuable considerations to be paid," and in such case the actual consideration may always be shown.

3. **DEED Delivery: Record After Death.** Where the deed was actually delivered to the grantee a short time after it was signed, with the request from the grantor that it be not recorded until after her death, because she did not wish to be harassed by her other heirs, and after her death it was recorded, it was delivered in her lifetime. Testimony of some witnesses that, after the making of the deed, she had said that the lawyer who drew it had told her she could recall it at any time, was not competent to prove the fact, and did not invalidate the delivery already made.

4. ————: **Undue Influence: Care of Son for Mother: Fiduciary Relation.** Expressions, voluntarily and repeatedly made ·by a mother, both before and at the time when, in full mental vigor, she executed the deed conveying a valuable farm to a dutiful son, that she felt under pecuniary obligations to him for the sacrifices he had made for her and the work and loving service he had rendered her during her early widowhood and for the considerate and sacrificing care he and his wife had rendered her in her old age, rebut the presumption that the deed was the result of undue influence exercised by the son or his wife over

Goodman v. Griffith.

her, even though it be admitted that a fiduciary relation existed between them at the time and continued to her death. An influence superinduced by the natural kindly acts of a son towards an aged and dependent mother is not an undue influence within the meaning of the law.

Error to Louisiana Court of Common Pleas.—*Hon. David H. Eby*, Judge.

AFFIRMED.

*Ball & Sparrow* and *Dempsey & McGinnis* for plaintiffs in error.

(1) The court permitted, over the objections of plaintiffs, incompetent and illegal evidence, especially as to the admission of evidence of J. E. Thompson, lawyer, who wrote the deed in question for deceased. R. S. 1909, sec. 6362; State v. Dawson, 90 Mo. 149; 1 Greenleaf on Evidence, sec. 240; Henry v. Buddicks, 81 Mo. App. 360; Ingerham v. Weatherman, 79 Mo. App. 480; Sweet v. Owens, 109 Mo. 1. (2) The court permitted illegal and incompetent evidence as to the consideration of the deed. (3) The findings and judgment of the trial court should have been for the plaintiffs and against the defendants. Therefore, the findings and judgment of the court are erroneous. Ennis v. Burnham, 159 Mo. 494; Turner v. Turner, 44 Mo. 535; Cadwallader v. West, 48 Mo. 483; Ranken v. Patton, 65 Mo. 378; Ryan v. Ryan, 174 Mo. 279; Reed v. Carroll, 82 Mo. App. 102; Mowry v. Norman, 204 Mo. 173; Bradford v. Blossom, 190 Mo. 110; Roberts v. Bartlett, 190 Mo. 680 (but see p. 700); Durfee v. Bartlett, 57 Mo. 374; Leavitt v. LaForce, 71 Mo. 353; Armstrong v. Logan, 115 Mo. 465; Dausman v. Ranken, 89 Mo. 677; Reid v. Carroll, 82 Mo. App. 102.

*J. D. Hostetter* and *J. E. Thompson* for defendants in error.

(1) Although the trial court ruled that Thompson's evidence so far as communications made to him by Mrs. Bralley, was incompetent, plaintiffs have seen fit to collate authorities and make this point as though the court's ruling had been against them. The statute is only leveled at communications made by a client to the attorney, and this the court upheld. (2) The testimony given by Mrs. Goodman as to conversations had with her mother, as to the circumstances under which the deed was executed, outside of the presence and hearing of defendants, was wholly incompetent, and the court erred in admitting such testimony. Such testimony is only admissible to show the state of the affections of the testator or grantor, and never as proof of the facts stated, and where, as in this case, the mind of the testator or grantor is not in any manner attacked or brought in question, they are not admissible for any purpose. Such declarations have no probative force to establish undue influence, etc. They are never admissible as evidence of the facts mentioned in the declaration. Jones v. Thomas, 218 Mo. 543; Jones v. Roberts, 37 Mo. App. 163; Doherty v. Gilmore, 136 Mo. 414; Rule v. Maupin, 84 Mo. 587; Bush v. Bush, 87 Mo. 480; Schierbaum v. Schemme, 157 Mo. 1. (3) There is no presumption against a voluntary conveyance from a parent to a child. Doherty v. Noble, 138 Mo. 25. There is ordinarily no presumption that the gift of a parent to his child is invalid when the parent is of sound mind. Hamilton v. Armstrong, 120 Mo. 616. (3) The law presumes much more in favor of a delivery of a deed in cases of voluntary settlement in favor of a wife, child or near relative, than it does in ordinary cases of bargain and sale between strangers. Rumsey v. Otis, 133 Mo. 95; Hamilton v. Armstrong, 120 Mo. 616. (4) The

consideration clause in a deed is always open to explanation, and it is always competent to show what the actual consideration of a deed is. Kincaid v. Irvine, 140 Mo. 615; O'Day v. Conn, 131 Mo. 321; Squier v. Evans, 127 Mo. 514; Bank v. Aull, 80 Mo. 201; Baile v. Insurance Co., 73 Mo. 371. (5) The issue of undue influence being one of fraud or bad faith, it devolves upon him who charges undue influence to prove it. Carl v. Gabel, 120 Mo. 297; Doherty v. Gilmore, 136 Mo. 414; McFadin v. Catron, 138 Mo. 219. (6) While fraud may be deduced from the circumstances of the case and the acts of the parties, yet mere suspicion is not sufficient, nor can it be presumed, but must be established as an affirmative fact, and if they consist as well with honesty as with fraud, the transaction should be held honest. Bank v. Worthington, 145 Mo. 91; Chapman v. McIlwrath, 77 Mo. 38; Webb Admr. v. Darby, 94 Mo. 621. (7) Even admitting the defendant Griffith had influence over his mother (which we do not, other than as ordinarily a son has), there is no evidence that he exercised such influence, not even in the testimony of Mrs. Goodman. "It is not the existence, but the exertion of that improper influence, which invalidates the transaction." Sunderland v. Hood, 84 Mo. 297; Brinkman v. Rueggesick, 71 Mo. 556; Doherty v. Noble, 138 Mo. 32; McKinley v. Hensley, 74 Mo. 332; Jackson v. Hardin, 83 Mo. 185. (8) The fact that an old man acts under the advice of his son in his ordinary business affairs, and is influenced by his affections for him, does not tend to prove undue influence in his execution of a deed to his son. Francis v. Wilkinson, 147 Ill. 370. The settled meaning of undue influence in this State is such influence "as amounts to over-persuasion, coercion of force destroying the will power of the testator. It is not merely the influence of affection, nor the desire of gratifying the wishes of one beloved or trusted by the testator." Tibbe v. Kamp et al., 154 Mo. 545. It

must amount to moral coercion. Norton v. Paxton, 110 Mo. 456; Carl v. Gabel, 120 Mo. 297; Luebbert v. Brockmeyer, 138 S. W. 92; Turner v. Anderson, 236 Mo. 523. Such a fiduciary relation between parent and child as casts on the child the burden of proving that the conveyance to him from the parent was the free will of the parent, does not arise merely from the fact that an aged and infirm parent is under the ministering care of a son who attends to the business of the parent as to renting his farm and negotiating a loan. Huffman v. Huffman, 217 Mo. 182; Winn v. Grier, 217 Mo. 420; Jones v. Thomas, 218 Mo. 508.

GRAVES, P. J.—Action in equity to set aside a deed to certain real estate in Pike county, made July 2, 1903, by Emily Bralley to her son James E. Griffith and his wife, Kate Griffith, and to partition the said lands. The petition also speaks of a will executed at the same time. The charging part of plaintiffs' bill in equity, in so far as is material, is as follows:

"Plaintiffs further represent to the court that soon after the death of the said George L. Bralley, the said husband of the said Emily Bralley, deceased, the said defendant, James E. Griffith, moved from Bowling Green, Missouri, to the city of Louisiana, Missouri, and into the home of his mother, Emily Bralley, and continued to reside in said home until the death of his mother, Emily Bralley. That said Emily Bralley was quite old and directly under the influence of the said defendant James E. Griffith; that the said defendant, James E. Griffith, contriving and designing to surreptitiously divest and deprive plaintiffs, who, with the exception of James A. Goodman, A. D. Cloyd and M. M. Gillum, are the children, grandchildren and great-grandchildren of the said Emily Bralley, deceased, of any interest in her estate, by false and fraudulent representations, and by a systematic course of either remaining with her, or having some member of

his family do so, during all the time, thereby trying to prevent the said Emily Bralley, deceased, from having open and free communication with her kindred and friends, and especially her daughter, Clarissa Eugenie Goodman, and by undue influence, did, on the 2nd day of July, 1903, persuade, entice and induce the said Emily Bralley to make to said defendants a deed to the following described real estate, which said deed is in words and figures as follows, to-wit: [Deed omitted and will omitted.]

"That said defendant James E. Griffith, for the purpose of carrying out his unfair designs and the control and influence he had over his said mother, persuaded and influenced her to go, and he did take her, to the city of Bowling Green, Pike county, Missouri, to the home of J. E. Thompson, son-in-law of defendants, and a lawyer by profession, and while she was there at the home of said Thompson, he prepared and in connection with the said defendant James E. Griffith, persuaded and induced the said Emily Bralley to execute said deed and said last named document called a 'will.' That said pretended deed and said pretended will were executed on the same day and at the same time and simultaneously one with the other.

"Plaintiffs further state and charge that there was no consideration paid the said Emily Bralley for the execution of said pretended deed, and that the said pretended deed and said pretended will, when so executed as aforesaid, were left in the possession of said J. E. Thompson and were to be returned to the said Emily Bralley when she so directed, but that said Thompson and said defendant, James E. Griffith, though often requested to return said pretended deed and said pretended will, refused so to do, but retained the same, and immediately upon the death of the said Emily Bralley, the said Thompson had said deed re-

corded in the recorder's office of Pike county, Missouri.

"That said defendants, especially the said James E. Griffith, acted as above stated in conjunction with the said J. E. Thompson for the purpose of inducing his said mother to deed and will to defendants her property, for the purpose of defrauding his sister and nephews and nieces, the plaintiffs in this cause, out of their share in the estate of the said Emily Bralley, deceased."

The prayer was that said deed be set aside and for naught held and that partition be made of the real estate described.

The answer was (1) a general denial, and (2) the defendants averred the due execution and delivery of said deed and that the same was the free and voluntary act of the grantor therein, for the consideration in such deed recited.

Upon a trial the judgment was for the defendants, fully sustaining said deed. Such judgment elaborately goes into the facts of the case, and makes a finding upon all disputed matters, but the above will suffice for the present. After an unsuccessful motion for new trial the plaintiffs bring the case here by writ of error.

The assignments of error cover, (1) the admission of incompetent evidence, and (2) that the judgment was for the wrong party. This sufficiently states the case.

I. Defendants in error raise the point that the writ of error was not sued out within time, i. e., within one year. They have lodged herein proper motions to quash the writ for that reason. There are minors as well as adults in the case. Defendants say that the writ should be quashed as to all. An interesting discussion is made, but with the view we have of the merits of the case we shall not spend force upon this question.

II. (a) In 1903, on July 2nd, Emily Bralley made and executed a deed (the one in dispute) by which she conveyed her home place in the city of Louisiana, Missouri, to her son James E. Griffith, and his wife Kate. At the same time she executed a will (set out in the petition in this case) by which she gave one-half of her property to her son, James E. Griffith, and the other one-half to her said son for the use and benefit of her daughter Clarissa E. Goodman, during her life, and thereafter to her heirs freed from the trust. These two instruments were drawn by Judge J. E. Thompson at her request and he was offered as a witness in the case. Judge Thompson, over the objection of counsel for plaintiffs in error, was permitted to testify quite fully as to what was said as between him and Mrs. Bralley. The objections ran along with the testimony and seem to have been held under consideration by the court. Finally the trial court thus delivered itself upon the question:

"By the COURT: I will state that since adjournment last evening, in reviewing some of the objections made to the admissibility of testimony, to-wit, the testimony of Judge Thompson, I am satisfied that his testimony with reference to the drawing of the will and the deed should be regarded as having been under the relation of attorney and client as between him and Mrs. Bralley, and his testimony as to those facts, that is, as to the information received from Mrs. Bralley in connection with that matter, would be incompetent; I call attention to it now, I think that is always fair on the part of the court, so if the parties desire to introduce further testimony by reason of the court's views on that line of the case, they would have the privilege of doing so.

"Mr. HOSTETTER: The court only holds his testimony as to what transpired between him and Mrs. Bralley is incompetent.

"By the COURT: Yes."

Notwithstanding this statement of the court counsel here urge that error was committed in receiving and considering the testimony of Judge Thompson. From the time the court made this deliverance the record fails to show any change of mind upon the part of the court. It is evident from this and all that follows in the record that the trial court did not consider that portion of Judge Thompson's testimony which, under the general rule in cases of attorney and client, might be said to be privileged. Under this state of facts it is unnecessary for us to discuss the question as to whether or not this portion of the witness's testimony was competent in this particular case. The trial court held it to be incompetent and that fully meets the demands of plaintiffs and we need take no further notice of it. As to other matters the testimony of the witness was clearly competent, notwithstanding the fact that he was the son-in-law of the defendants in error.

(b) The next contention as to the admission of evidence is that the court admitted improper evidence as to the consideration of the deed. The defendants introduced evidence tending to show that James E. Griffith had done much for his mother in the way of looking after her and her business matters for a long period of years. It was also shown that the mother said, after the death of her last husband and she became repossessed of her quite large estate, that she was now in position to repay James E. for his trouble, and expected to do it. This is the evidence objected to by counsel for plaintiffs, and faintly presented by assigned error here.

This evidence is competent upon more than one theory of the case. The question of undue influence is an issue, and it was competent upon that issue. Again, the deed recited a consideration of "one dollar and other good and valuable considerations to be paid by the said parties of the second part." The actual

consideration for a deed may always be shown, as also can the want of consideration. This hardly needs citation of authority. The consideration clause of a deed is always open to explanation. [O'Day v. Conn, 131 Mo. 1. c. 327; Squier v. Evans, 127 Mo. 1. c. 519.]

This disposes of all assignments of error except the general one that the finding and judgment should have been for the plaintiff in error.

III. Going now to the merits of this case, the contention of counsel may be thus stated: The deed in question is bad because (1) it was the result of undue influence upon the part of the grantees therein, (2) it was procured by false and fraudulent representations, (3) it was without consideration, and (4) it was never delivered. Of these contentions in reverse order.

(a) That there was a delivery of this deed under the evidence we think cannot well be questioned. Excluding the testimony of Judge Thompson who wrote the deed, we have the undisputed evidence of Mrs. Thompson, his wife, and J. S. Fitzjerrell, the attorney and notary who took the acknowledgment of the deed. Both of these witnesses say that the grantor directed that the deed be delivered to James E. Griffith, and that he be requested not to record it until after her death. The grantor explained to them why she made the request as to the recording. Her reason was that she did not want to be harassed by the plaintiffs in error. The deed was in fact delivered to Mr. Griffith the day after its execution in accordance with the directions given by the grantor. The only evidence opposed to the positive testimony of these witnesses is the statement by some of the plaintiffs that the grantor, after the making of the deed, had said that Judge Thompson had told her that she could recall the deed at any time or something to that effect. Their statements were not competent to prove the fact. It is

also extremely doubtful whether or not the grantor in the deed was mentally sound at the time of such alleged statements, but this is rather immaterial. The court did not err in finding that the deed had been delivered in the lifetime of the grantor, although held from record at her request.

(b) The other three questions can best be considered together. They each call for disclosure of more facts. At the time of making the deed the grantor was about eighty years of age, but in the possession of full mental vigor. She lived two years or more thereafter, and having Bright's disease her mind failed her several months before her death. It is not urged that the grantor was not mentally capacitated to make a deed in July, 1903, and were it urged such contention would be overwhelmingly refuted by the evidence. Mrs. Bralley had been married three times. The first husband was Noah Griffith, the ancestor of the plaintiffs and of the defendant James E. Griffith. The second was John Griffith, a cousin of the first husband, and the third was Dr. Bralley. No children resulted from the second and third marriages. By the second husband a considerable amount of property was acquired by the wife. The third marriage was stormy for awhile, but presently Dr. Bralley got possession of the money, and things moved more amicably. There were two or more separations and as many reconciliations. Shortly before the making of the deed in question Dr. Bralley, the third husband, died, leaving a will, by the terms of which the widow became repossessed of all her property and its accumulations if any. There was a farm of 230 acres worth $9000, and the property in dispute, worth from $5000 to $7500, according to the testimony, as well as other property, including a good-sized judgment against the Goodmans. The evidence shows that defendant James E. Griffith had promised his father upon his death-bed that he would look after his mother.

That in compliance with that promise he quit college, gave up his ambition of becoming a professional man (lawyer), and did look after his mother and sisters. The second husband lived but a year, or about that length of time, and the son was again compelled to look after the mother and assist her in the management of her property. The third marriage followed in a little less than two years, and during the stormy portion thereof the son was again to the rescue of the mother. After the death of Dr. Bralley, the mother, for a third time disconsolate and alone, sent for her son, and he broke up his home in Bowling Green, and with his wife moved to the homestead in Louisiana, and there remained comforting and caring for the mother until the final call. That James E. Griffith was a dutiful son, and that he sacrificed much cannot be gainsaid under the record before us. But leaving this topic for the present we take up another.

Just after the son had moved to Louisiana to care for his mother she repeatedly said that, now she was in a position to do it, she was going to repay Jim Ed. (the defendant) for his trouble and kindness. Shortly following these expressions came the deed and the will we have described. The evidence also shows that the mother had in a financial way assisted the other children. Two had died before the mother, leaving the grandchildren who are plaintiffs here. Mrs. Goodman and James E. Griffith were the only surviving children. Judgments were pending against Mrs. Goodman and her husband. Under these circumstances Mrs. Bralley went from Louisiana to Bowling Green with Mr. and Mrs. Griffith. They visited the family of Judge Thompson, whose wife was a granddaughter of Mrs. Bralley, and the daughter of these defendants. At the dinner table Mrs. Bralley stated to Judge Thompson that she wanted to talk to him about some business and asked when she could see him. He said they could talk then. Accordingly they and

Mrs. Thompson, upon the close of the meal, repaired to the sitting-room, and she then told Judge Thompson that she wanted Jim Ed. and Kate (the defendants) to have the home place at her death and asked him how it could be done. Judge Thompson told her that she could make a deed to them and reserve to herself a life estate, and in this wise leave to herself the use and occupancy of the house as long as she lived. She directed the deed to be thus drawn and it was acknowledged and delivered in manner as above detailed. She also stated that she desired the remainder of her property to go to her living children (James E. Griffith and Mrs. Goodman), but that she did not want any of her property to pay the debts of Mr. Goodman, and asked how that could be done. Judge Thompson then told her that she could make a will, placing the interest of Mrs. Goodman in trust during her lifetime, and then have it go to the children, and this she directed to be done. Mr. Fitzjerrell witnessed the will at the time he took the acknowledgment of the deed. Neither Griffith nor his wife was present at the time this talk was had. At Mrs. Bralley's direction the will was held by Judge Thompson.

Was there undue influence in this case? The evidence discloses that the grantor in the deed was a self-willed woman. It is true that in her previous trouble she advised with her son. It is true that the son had at times acted as the agent of the mother, but not for some years prior to the death of Dr. Bralley the husband. It is true that after the death of Dr. Bralley, at the request of the mother he came to her home to care for in her old age, and whilst we are not fully convinced that the relationship thus created was sufficient to be called a fiduciary relation, yet we shall consider the case as if such a relation did in fact exist. The evidence shows that this son had sacrificed much for his mother. The evidence shows her oft

repeated expressions of an intent to do something for
him. The property was hers, and she had the right
to do with it as she pleased. There is no direct evi-
dence that the son or his wife ever attempted to per-
suade or induce the mother to make the deed in ques-
tion. As to the charge of coercion there is not
the faintest evidence. Plaintiffs do say that the son or
his wife were continuously with the mother, and there-
by the other heirs were precluded from private inter-
views with the deceased. This position is thoroughly
discredited by a mass of testimony. The plaintiffs,
according to their statement, knew of the deed shortly
after its execution; and after the old lady had become
practically *non compos mentis* procured the execution
of a will, in which the testatrix undertook to recall any
unrecorded deed which she had made. We doubt very
much whether Mrs. Goodman and the other plaintiffs
knew of this deed as they claim. Had they known of it,
and the property by it conveyed, they would, when they
wrote the last will for deceased (for the evidence is
pretty clear that the weakened mind of Mrs. Bralley
was not the author of this last will), have been more
particular in describing the deed they desired to be
cancelled and recalled. It strikes me that they were
suspicious that some deed might have been executed
and delivered, and in an attempt to obviate its force
prepared the short but blanket-like will. But be that
as it may, it is not a turning point in the case. Grant
it that by reason of the alleged fiduciary relation the
burden as to this deed has been shifted to the defend-
ants, yet the trial court was right in disallowing the
claims of undue influence. At the making of the deed
the grantor fully explained her reasons therefor. Both
before and after its execution she said that she felt
under pecuniary obligations to the son for the sacri-
fices which he had made for her and the actual work
he had done for her. At those times she was fully
possessed of her usual mental vigor. These expres-

sions, voluntarily and repeatedly made, rebuts the presumption of undue influence, and with that out of the case, there is no substantial evidence tending to show undue influence. An influence superinduced by the natural kindly acts of a son towards an aged and dependent mother is not an undue influence within the meaning of the law. But in this case we need hardly consider such an influence. It is clear that the mother was conscious of an obligation upon her part to do something for the son in return for what he had done for her, and gave to him and his wife her homestead. The son's wife had been dutiful toward her. She had broken up her own home to come and minister to her wants during the few remaining years of her life. To our mind this deed was but the promptings of the old lady's sense of right and justice. What we have said not only disposes of the question of undue influence, but likewise the question of coercion and want of consideration. The judgment *nisi* was for the right party and is therefore affirmed. All concur.