# H. S. COLES et al. v. ANNA BELFORD et al., Appellants.

### Division One, July 11, 1921.

1. **CONVEYANCE: Testamentary Deed.** After the owner of land had signed and acknowledged a deed of gift in Illinois, conveying to her nieces her home in Springfield, Missouri, she handed it to one of them, saying, "You take this and put it in your box and keep it and whenever anything happens you send it to Springfield and have it recorded," the words "whenever anything happens" being further elucidated by the witness as being understood by him to mean "when she died." *Held,* that, although by this delivery the maker may be said to have parted with dominion over the deed, her intention was that it should take effect upon her death; it was therefore testamentary in character, and did not pass a present interest in the property to the grantees.

2. ———: ———: **Delivery: Intent.** In order to constitute a valid delivery the handing of a deed by the maker to one of the grantees must be done with the intent of passing an estate *in praesenti,* and if the giving of the deed into the hands of the grantee is not done with the intent of passing the title at the time there is no delivery in contemplation of law.

3. ———: ———: **Retaining Possession.** Retention of the management and control of property after a deed of gift conveying it to nieces is signed, acknowledged and handed to one of them, paying taxes and making improvements upon it, receiving the rents and placing it in the hands of an agent to be sold, by the grantor, are evidence that it was not her intention that the deed should take effect and pass title as a present transfer.

4. ———: ———: ———: **Self-Serving Evidence.** In a suit by heirs of the maker against the grantees to set aside a deed of gift, letters written by the grantor, after she had signed and acknowledged it, to a real estate agent, her banker and attorney, relating to the payment of taxes upon the property, the making of repairs and the sale thereof, are not merely self-serving statements, but competent cumulative evidence consistent with the oral testimony of the addressees who detail facts showing her continued exercise of control over the property and her intention that the deed was not to become effective until her death. Besides, the grantees, having admitted in their answer that the grantor con-

tinued to control the property after the execution of the deed, cannot be heard to complain of such letters.

5. ——: ——: **Decree on Another Ground.** The decree of the trial chancellor cancelling and annulling a deed being correct will be upheld on appeal, although he reached that conclusion on the ground that the deed "was not executed and delivered," and the Supreme Court are of the opinion it was testamentary in character and therefore void.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED.

*J. O. Patterson, A. E. Butters* and *Patterson & Page* for appellants.

(1)   A deed, regular on its face, with acknowledgment formally correct, found in possession of the grantee, is prima-facie valid, and the burden is upon plaintiffs to show its invalidity. R. S. 1909, sec. 2818; Bohan v. Casey, 5 Mo. App. 101; Harvey v. Long, 260 Mo. 374; Elliott v. Sheppard, 179 Mo. 382. (2)   Before a deed prima-facie valid can be declared invalid, the evidence of its invalidity should be clear, satisfactory, and convincing, and there should be a decided preponderance in favor of its invalidity. Barrett v. Davis, 104 Mo. 549. (3)   The recitals of the deed, together with the testimony of the notary public who took the acknowledgment, show a sufficient delivery. Harvey v. Long, 260 Mo. 374; Cook v. Newby, 213 Mo. 471; Miles v. Robertson, 258 Mo. 717; Standiford v. Standiford, 97 Mo. 231; Fenton v. Fenton, 261 Mo. 202; Potter v. Barringer, 236 Ill. 224. (4)   The admission of the diary of Mrs. Wilson was error, and the letters of Mrs. Phelps after date of deed tending to show acts of ownership, though admitted without objection, have no probative force, being in the nature of self-serving statements. Elliott v. Sheppard, 179 Mo. 382; O'Day v. Realty Company, 191 S. W. 41; Townsend v. Schaden, 275 Mo. 227.

*M. C. Smith, R. Magoon Barnes, Jay H. Magoon, Kirk Hawkins,* and *Wallace J. Black* for respondents.

(1) The evidence shows there was no sufficient delivery of the deed in question to divest Carrie S. Phelps of the title and vest the same in Anna and Mary Belford. Miller v. Lullman, 81 Mo. 316; Tyler v. Hall, 106 Mo. 313; Hall v. Hall, 107 Mo. 101; Tobin v. Bass, 85 Mo. 654; Staniford v. Staniford, 97 Mo. 231; Sneather v. Sneather, 104 Mo. 201. (2) Mrs. Wilson's diary was competent evidence. Elliott v. Sheppard, 179 Mo. 582. (3) Where the evidence is contradictory and conflicting, this court has repeatedly deferred to the decision of the lower court. Jones v. Thomas, 218 Mo. 540; Brecker v. Fillingham, 209 Mo. 583; Huffman v. Huffman, 217 Mo. 182. When the question of delivery arises between a grantor and a grantee, it is to be determined by a preponderance of evidence. 1 Devlin on Real Estate (3 Ed.), sec. 263b, p. 393.

ELDER, J.—This is a suit in equity to set aside a deed executed by Carrie S. Phelps, now deceased, conveying certain real estate located in the City of Springfield, Missouri.

Plaintiffs H. S. Coles and B. F. Shafer are nephews of Mrs. Phelps, and plaintiff Marie Porterfield is a niece. Defendants Anna Belford, Mary Belford and George F. Belford are nieces and nephew, respectively of Mrs. Phelps, and the remaining defendants are her collateral heirs at law.

Mrs. Phelps had a sister, Mrs. Belford, the mother of defendants Anna, Mary and George F. Belford, and a brother, Frank D. Shafer, both of whom lived near Lacon, Illinois. In November, 1909, the sister died, and Mrs. Phelps, who then resided in Springfield, went to attend the funeral. After the funeral she lived with defendants Anna and Mary Belford off and on for about two and one-half years, when she built a log cabin on the

farm of her brother, near his house, and resided there up until the time of her death.

The deed in controversy is a special warranty deed, dated January 17, 1910, conveying to defendants Anna Belford and Mary Belford a house and lot in Springfield, valued at $10,000, which for a long time prior to November, 1909, had been occupied by Mrs. Phelps as a home. The deed purports to have been acknowledged in Marshall County, Illinois, on January 17, 1910, before defendant George F. Belford, a notary public and brother of the grantees, the acknowledgment reciting that the grantor acknowledged "that she signed, sealed and delivered the said instrument as her free and voluntary act." The recited consideration is $1000, but it is conceded that the same was not paid. The instrument contains a release and waiver of the right of homestead, and warrants the promises as against all persons, claiming by, through or under the grantor. On cross-examination, over objection by counsel for plaintiffs, E. N. Ferguson, banker and advisor of Mrs Phelps in business matters, and a witness for plaintiffs, testified that the signature to the deed was that of Mrs. Phelps.

The testimony of defendant George F. Belford relative to the execution and delivery of the deed was to the effect that on Saturday, January 15, 1910, he was requested to come to the home of his sisters, Anna and Mary Belford, near Lacon, Illinois, where Mrs. Phelps was then living; that "Mrs. Phelps desired I should come down there and made a deed for her;" that when he arrived both of his sisters and Mrs. Phelps were there, and he had some talk with Mrs. Phelps about the matter of making the deed; that on the following Monday, January 17th, the deed was written by witnesses, Anna and Mary Belford and Mrs. Phelps being present at the time; that Mrs. Phelps "had another old deed of the property, she read one and I read the other one, she told me what to put in;" that "I had Aunt Carrie, Mrs.

Phelps, to sign it, and then she acknowledged it; first before that I read it over to her.''

"Q.   Now after the deed was acknowledged by her as you have stated, what did she do with it, if anything? A.   She gave it to Anna Belford and said to put it in her box.

"Q.   Whose box?   Anna Belford's box; she says, 'You take this and put it in your box and keep it and whenever anything happens you send it to Springfield, Missouri, and have it recorded.'

"Q.   Which one of your sisters took the paper?   A. Anna, I think.—

"By The Court: She told your sister to take the deed and put it in her box?   A.   Yes, sir, and keep it and whenever anything happened to her, when she died, to send it to Springfield, Missouri, and have it recorded. . . .

"Q.   Did she sign that deed in your presence?   A. Yes, sir.

"Q.   And delivered it to Anna Belford in your presence?   A.   They was sitting down by the table and she signed the deed right there; she handed the deed to me and I wrote the acknowledgment, and I handed it back to her and she handed it to Anna Belford.

"Q.   I will ask you to state to the court what her mental and physical condition was at that time, whether it was good or otherwise?   A.   She was in pretty good mental condition at that time, and understood everything she was doing.

"Q.   What was done there in the drafting of the deed was done at her direction?   A.   Yes, sir, everything that was done there was done under her direction.

"Q.   How old was she at that time?   A.   She was seventy-five or seventy-six.—

"Q.   There was no consideration paid for this deed? A.   I didn't see any paid for it.

"Q.   Why did you put in the deed an alleged consideration of $1000?   A.   Aunt Carrie told me to put it

in there; I says, 'What will I put in here?' and she said, 'Put in $1000.'

"Q. Did she understand it was a gift? A. That is what I understood it.

"Q. Did she tell you why she wanted to make the deed? A. She said she wanted to give the property to the girls, wanted them to have it."

There was no other evidence bearing upon the execution and delivery of the deed.

There was testimony for plaintiffs that on January 3, 1910, Mrs. Phelps, accompanied by plaintiff Marie Porterfield, returned to Springfield, Missouri, where they both remained until the latter part of February, 1910, and that while there Mrs. Phelps had some improvements made on the property conveyed by the deed in controversy, such as having bathroom fixtures installed and sewer connections made. There was testimony for defendants that Mrs. Phelps did not make this trip until March 1, 1910, and that during the entire months of January and February, 1910, she was at the Belford girls' home near Lacon, Illinois.

Carrie S. Phelps died January 14, 1917. At that time defendant Anna Belford had possession of the deed in suit, and sent it to Springfield, where it was filed for record in the office of the Recorder of Deeds for Greene County on January 18, 1917.

The foregoing for the present sufficiently outlines the facts in the case. Other matters which may be pertinent to the appeal will be referred to in the course of the opinion.

The petition alleges that Carrie S. Phelps was the owner of the property in question and had occupied the same for many years; that after her removal to Illinois she had received the rents therefrom, paid taxes and insurance thereon and made extensive repairs thereto; that there had been filed for record a deed "purporting to have been executed on the 17th day of January, 1910, by said Carrie S. Phelps, conveying said described lands to

defendants Anna Belford and Mary Belford;'' that ''said pretended deed was acknowledged before one George F. Belford.'' Proceeding, the petition further alleges as follows:

''Plaintiffs further allege that said notary public, George F. Belford, being related to said Anna Belford and Mary Belford, grantees in said alleged deed, unlawfully combined, confederated and conspired with them, the said alleged grantees, to procure and did obtain said fraudulent conveyance and deed for the unlawful purpose of procuring the title to said described lands without paying any consideration therefor, and in truth and fact no consideration whatever was paid to said Carrie S. Phelps or to anyone for her, and by fraud and false representations made to her by said defendants, Anna Belford, Mary Belford and George F. Belford, when her mind was in such condition that she did not comprehend the nature of the act, said Carrie S. Phelps being an aged woman at the time of the consummation of the transaction, or that said alleged deed was not executed, made or acknowledged by said Carrie S. Phelps, nor delivered to Anna Belford and Mary Belford, or either of them, nor to any person for said Anna Belford and Mary Belford, and that said deed is not in fact the deed of Carrie S. Phelps.

''The plaintiffs further say that at the date of said alleged deed and the date of the purported acknowledgment thereof before George F. Belford, said notary public, said Carrie S. Phelps was not in the State of Illinois.

''The plaintiffs do not know which of the alternative statements is true but believe and allege the former statement to be true, yet they are in ignorance whether it be the one or the other.

''The plaintiff further says that all of the aforesaid acts and things committed by defendants, Anna Belford, Mary Belford and George F. Belford were done by them with the intention and design to cheat, wrong and defraud these plaintiffs and other heirs of said

Carrie S. Phelps and obtain all of said real estate for their own use without any consideration therefor."

The answer admits that Mrs. Phelps occupied the premises as her residence until her removal to Illinois; admits the subsequent receipt by her of the rents therefrom and the payment by her of taxes and insurance, and the making of repairs thereto; admits the acknowledgment and recording of "a warranty deed executed on the 17th day of January, 1910, by Carrie S. Phelps," but denies each and every other allegation of the petition. The answer further avers that "the aforesaid warranty deed was voluntarily made, executed and delivered by the said Carrie S. Phelps to the said Anna Belford and Mary Belford as a gift, she, the said Carrie S. Phelps, reserving verbally a life estate to herself therein."

The reply denies the execution and delivery of the deed, denies that it was made as a gift, and denies that Mrs. Phelps verbally reserved a life estate.

The trial court found that the deed "was not executed and delivered by said Carrie S. Phelps to defendants Anna Belford and Mary Belford, or either of them, nor to any person for said Anna Belford and Mary Belford," and entered a decree cancelling and annulling the same, divesting defendants Anna and Mary Belford of all title to the lands claimed by virtue thereof, and vesting title and ownership of said lands in plaintiffs and defendants, as heirs of Carrie S. Phelps. From this judgment and decree defendants have appealed.

I.   Defendants assign as error that, "The finding and decree is against the evidence, against the weight of the evidence, and against the law under the evidence." The evidence wholly fails to show any mental incapacity of Mrs. Phelps as charged in the petition, nor was any particular effort made to prove such charge. On the contrary, the testimony tended to show that she was fully capable of transacting business. And that point not

**Testamentary Deed.**

being urged in the briefs, we shall eliminate it from consideration. And, the record disclosing no evidence of any character tending to prove the averment contained in defendants' answer that Mrs. Phelps verbally reserved a life estate in the property, we shall also exclude that question from attention. Defendants urge, however, that the deed is prima-facie valid, that before it can be declared invalid the evidence of its invalidity should be clear and convincing, and that the evidence for plaintiffs falls short of that.

The record, comprising 250 pages, sets forth the testimony of some 26 witnesses for plaintiff and of 12 for defendants. The examination of all of said witnesses, with a few exceptions, was confined to establishing whether on January 17, 1910 (the date of execution of the deed in controversy), Mrs. Phelps was at Springfield, Missouri, or at the home of the Belford girls near Lacon, Illinois; plaintiffs zealously contending that on that day she was at Springfield and therefore could not have executed the deed as alleged, and defendants as strenuously insisting that at that time she was at the Belford home, near Lacon, in Marshall County, Illinois. Plaintiffs do not directly attack the genuineness of Mrs. Phelps's signature to the deed, but only do so indirectly by endeavoring to show that she was not at the Belford home when it was said to have been executed. The deed, which was introduced in evidence, appears regular on its face, with formal acknowledgment, and, from the testimony of plaintiffs' witness Ferguson, which was not rebutted, it appears that the signature thereto was that of Mrs. Phelps. However, from the view we take of the case, the mass of testimony taken on both sides to prove the whereabouts of Mrs. Phelps at the time the deed purports to have been executed, is besides the real question involved, which is, was there a sufficient delivery of the deed to divest Carrie S. Phelps of title and to vest the same in Anna and Mary Belford? Bearing upon the question of delivery we find only the statement

of defendant George F. Belford that Mrs. Phelps gave the deed to Anna Belford, saying, "You take this and put it in your box and keep it and whenever anything happens you send it to Springfield, Missouri, and have it recorded." True, by this delivery it may be said that Mrs. Phelps parted with dominion over the deed. However, when she said *"whenever anything happens* you send it to Springfield, Missouri, and have it recorded," that language indicates that it was her intention that the deed was not to become operative until her death. This interpretation is borne out by the further testimony of the witness George Belford, when, in response to an interrogation by the court, "She told your sister to take the deed and put it in her box?" he replied, "Yes, sir, and keep it and whenever anything happened to her, *when she died,* to send it to Springfield, Missouri, and have it recorded." Accordingly, upon authority of the adjudicated cases, the instrument was testamentary in character, did not pass a present interest in the property to the grantees, and hence was not good as a deed, notwithstanding the intention of Mrs. Phelps that it should take effect at her death. [Huey v. Huey, 65 Mo. 689; Terry v. Glover, 235 Mo. 544; Griffin v. McIntosh, 176 Mo. 392; Murphy v. Gabbert, 166 Mo. 596; Givens v. Ott, 222 Mo. 1. c. 411; Scott v. Scott, 95 Mo. 300.] Under these authorities even a valid delivery within the life time of the grantor is not shown. This evidence fails to show that the handing of the deed to one of the grantees was done with the intent of passing an estate *in praesenti,* and intent is a material matter on the question of delivery. If the grantor did not give the deed to the grantee with intent of passing title at that time, then there was no delivery within contemplation of law.

As further indicative of the fact that it was not the intention of Mrs. Phelps that the deed should take effect and pass title as a present transfer, the record discloses that after the date of execution of the deed she continued, through agents, up until the time of her death, to re-

tain the management and control of the property conveyed, even endeavoring to find a purchaser therefor. As to this, E. N. Ferguson, banker, of Springfield, testified that Mrs. Phelps did her banking business with the banks with which he was associated; that after January 17, 1910, he received letters from her "in regard to what I considered the property worth and the advisibility of putting it on the market; I went down and looked at the property and made up my mind what I thought it was worth, and I advised her if it was my property I would sell it for that price, whatever that was; I looked around and I think I inquired of several real estate men if it was possible to sell it for the price, but I never was able to get a purchaser." Witness identified letters written to him by Mrs. Phelps relating to the payment of taxes on the property, the relaying of a walk and the widening of an alley adjacent thereto. Mr. M. C. Smith, attorney, of Springfield, testified that he had been Mrs. Phelps's personal counsel from 1905 until the time of her death; that she had possession and control of the property "all the time up to her death;" that in 1913 he represented her in connection with proceedings instituted for the widening of an alley adjoining the property; that in 1913 he had a new roof placed on the building, and had the barn and fence repaired; that in 1914 or 1915 he renewed an insurance policy on the building, the renewal being written in Mrs. Phelps's name. Witness identified several letters written to him by Mrs. Phelps, relating to repairs to the property. James W. McGregor testified that he occupied the property for six or seven years from some time in 1910, renting the same from Mrs. Phelps and paying the rent to Mr. Ferguson of the Holland Bank and the State Savings Bank. Moreover, in their answer defendants admit that after about March, 1910, "the said Carrie S. Phelps rented the said property, received the rents therefor, paid the taxes thereon, and that she procured and maintained policies of insurance payable to herself thereon

and that she made such repairs to the buildings as from time to time were necessary, and that she exercised general control of said lands.''

Hence, the evidence and pleadings clearly showing that there was not such a delivery of the deed as to pass a present interest in the property conveyed, we disallow defendants' claim of error.

II. Defendants' remaining contention is that ''the court erred in admitting incompetent, irrelevant, immaterial and prejudicial evidence on the part of plaintiffs, over the objection and exception of defendants.'' One portion of the admitted evidence complained of was a diary kept by Mrs. Margaret Wilson, of Springfield, a witness for plaintiffs, containing an entry: ''Jan. 21-1910. Was rather a misty day. Took birthday dinner with Mrs. Phelps; Marie was there; also Mr. John Kelly was there. We had a nice turkey dinner.'' Defendants argue that the diary, not being kept in chronological order, was inadmissible. In view of our ruling that the question of the sufficiency of delivery of the deed from Mrs. Phelps is determinative of the issues presented, it is unnecessary for us to pass upon the admissibility of this evidence for the reason that the same only went to establish the whereabouts of Mrs. Phelps on the 21st day of January, 1910, which is a secondary inquiry.

*Diary as Evidence.*

Other evidence excepted to was the letters written by Mrs. Phelps to E. N. Ferguson and M. C. Smith, respectively, relating to taxes and repairs on the property in question and the prospective sale thereof. Defendants urge that these are but self-serving statements, made after the execution of the deed, and have no probative force. To this we cannot lend acquiescence. The continued exercise of general control over the property, as evidenced by these letters, is entirely consistent with the theory that it was the intention of Mrs. Phelps that the deed was not

*Evidence of Intention.*

to become effective until her death.  They are cumulative towards proving that theory and were properly admitted.  Furthermore, defendants having admitted in their answer that Mrs. Phelps continued to control the property after the execution of the deed, they cannot be heard to complain of evidence to the same purpose and effect.

III.  A reference to the finding of the trial court shows that it found that the deed "was not *executed* and delivered by said Carrie S. Phelps to defendants Anna Belford and Mary Belford, or either of them."  While **Execution.** there was substantial evidence upon which to base the finding that the deed was not executed, we are nevertheless refraining from passing upon that point, as the larger question presented is that of delivery of the deed.  Holding, as we do, that the instrument was testamentary in character, and hence not good as a deed, it is unnecessary to expressly rule upon the matter of execution.

A careful review of the entire record convinces us, however, that the decree of the learned chancellor *nisi*, cancelling and annulling the deed, was correct.  The judgment is accordingly affirmed.  All concur.