Delma Clark, Appellant, v. Vivian Skinner et al.—70 S. W. (2d) 1094.

Division One, April 19, 1934.

*Jerry M. Jeffries* and *Redick O'Bryan* for appellant.

*Hulen & Walden* for respondents.

1192

STURGIS, C.—This is a suit to set aside and declare void two warranty deeds in usual form executed by Moses McGrew as one transaction, the one deed conveying to Vivian Skinner and Neva Littrell, sisters, eighty acres of land in Randolph County, this State, and the other conveying to Maggie Wirt Littrell and Waldo Littrell, mother and son, one hundred acres of land in the same county. Moses McGrew, the grantor, had lived in Randolph County since 1885, coming there as a young man, engaged in farming, acquired this land, and represented himself to be single and never to have been married.

The deeds were executed the day of his death in June, 1930. The grantees in the deeds, the defendants here, were Mrs. Maggie Wirt Littrell, then a widow, and her three children, Vivian Skinner, whose husband, Aubrey Skinner, is joined as a defendant, Neva Littrell, a daughter, and Waldo Littrell, a son. Moses McGrew, at the time of making these deeds and for many years prior thereto, had made his home with the Littrells, who also were engaged in farming and lived near McGrew's land. Mrs. Littrell had been a widow only a short time. The deeds were made to the surviving members of Watts Littrell's family, his widow and three children, with which family the grantor had made his home for more than twenty-five years. After the making of these deeds and McGrew's death, the plaintiff, a resident of Kentucky all her life, and of which state Moses McGrew was a resident before coming to Missouri in 1885, appeared on the scene and brought suits to set aside these deeds, claiming to be the child and only heir of Moses McGrew by a Kentucky marriage in 1885 between Moses McGrew and Mollie Bet Jones.

Alleging that she is the daughter and only heir of Moses McGrew, plaintiff further alleges that the two deeds mentioned should be set aside and declared void on the ground that at the time of executing same the grantor was mentally incapable of executing deeds; that the deeds were never delivered, were procured by undue influence and were without any consideration. The answer denied all these allegations. The court heard the evidence and found the issues for the defendants, reciting in the decree the court's finding that "at the time of the execution of said deeds, Moses McGrew was the owner in fee simple of said above described real estate, and was of sound mind; that said deeds, and each of them, were executed freely and voluntarily by said Moses McGrew with full understanding on his part of their nature and import, and that he was not unduly influenced to make same, and that at said time, no fiduciary relationship existed between him and the defendants herein, or any of them, and that the consideration for said deeds was the love and affection grantor had for the respective grantees therein, and the court finds the issues joined in said consolidated causes for defendants, and each of them, and against plaintiff." There were originally two suits, each involving one of the deeds mentioned, but by consent they were consolidated for trial and one judgment rendered covering both. From the judgment entered the plaintiff has perfected her appeal to this court.

It will be noticed that while the trial court did not make a direct finding on the issue as to whether plaintiff as the daughter and only heir of Moses McGrew, as its other findings made it unnecessary to do so, it is conceded that the court did so find, and defendants concede that the evidence amply justifies such finding. The evidence is that Moses McGrew lived in the same neighborhood in Kentucky with

plaintiff's mother, Mollie Bet Jones, and "kept company" with her just prior to his coming to Missouri; that shortly after coming to Missouri at the age of twenty-three, Moses McGrew returned to Kentucky for only a short visit and married Mollie Bet Jones there in March, 1885, but immediately returned to this State and never again saw or communicated with her. She continued to live with her parents in Kentucky as before and in June, 1885, gave birth to this plaintiff. Plaintiff's mother died in Kentucky when plaintiff was seven or eight years old and plaintiff continued to live there with her mother's parents till she married one Clark. Plaintiff says that while she knew her real name was Delma McGrew, her mother was always known as Bettie Jones; that she never saw her father and was informed and supposed he was dead; that she first learned that he died in Missouri in 1930 through her mother's brother shortly after such death. Moses McGrew never married in Missouri and always represented and was supposed in the community to have never been married or had any children. John Harris, a cousin, came with McGrew from. Kentucky and also settled in Randolph County and knew of McGrew's marriage in Kentucky to plaintiff's mother, but, at McGrew's request, never divulged the fact of his marriage or past history until after McGrew's death, and then communicated such fact to plaintiff's relatives on her mother's side. In this way the true facts as to McGrew's dying and owning considerable property in this State became known to plaintiff and this suit followed. It also appears that Moses McGrew, on coming to Missouri, severed all communications with his own people in Kentucky and became as a stranger to them. These facts are thus outlined as they have a bearing on the issues for decision.

The court found and it is conceded that these deeds were deeds of gift without consideration except the gratitude, love and affection of Moses McGrew for the Littrell family, the grantees, to whom he was not related by blood or marriage. This fact is more easily understood when we remember that, whatever may have been the cause, Moses McGrew in early life left his native state to go into a strange land and there begin life anew. To his mind his marriage in Kentucky imposed no obligations on him and the same was to be blotted out and forgotten. On coming to Randolph County in 1885 he found a friend in the father of Maggie Wirt Littrell, who gave him employment. When he died and Maggie Wirt married Watts Littrell, he found friends in them also and went to live with them and their home became his home and their children the objects of his affections. He was undoubtedly thrifty and industrious. He purchased the one hundred eighty acres of land in controversy, which he farmed while living with the Littrells, and at his death had some money in the bank and considerable personal property. On more than one occasion he expressed his intention to give his property to the Littrells because

of their kindness and help to him, especially in giving him a home, and in this connection said that his own people cared nothing for him, nor did he for them. Moses McGrew had, however, always paid the Littrells two dollars per week so as not to be an actual expense to them. The making of these deeds by grantor to defendants, disregarding his blood relatives in doing so, is not, under the circumstances, so unnatural as to excite suspicion or to call for further explanation.

The sole basis of the charge of undue influence in procuring the deeds in question is that defendants occupied a fiduciary and confidential relation to the grantor, placing on them the burden of showing the transaction to be free from the imputation of undue influence. There is clearly no evidence of actual undue influence being used. There is not a particle of evidence that defendants, or anyone for them, ever demanded or even requested Moses McGrew to make these conveyances or to give his property to them, and it is hardly claimed that defendants dominated and controlled the mind of the grantor or by the exercise of overpersuasion or mental coercion brought about the execution of these deeds. The only claim is that, the relation of confidence and trust having been established, the burden was on defendants to refute this presumption and disprove that the conveyances were the result of undue influence. [Cook v. Higgins, 290 Mo. 402, 235 S. W. 807, 814; Dingman v. Romine, 141 Mo. 466, 474, 42 S. W. 1087.] The evidence, however, does not establish the relation of trust and confidence. While the relations sustained between the defendants and Moses McGrew were such as to create and doubtless did create a strong feeling of friendship and gratitude on the part of McGrew, that is far different than the trust and confidence from which the law raises the presumption of undue influence. The evidence here is that when McGrew came to Randolph County as a young man, Mrs. Littrell's father gave him employment on the farm. Later when Maggie Wirt became the wife of Watts Littrell, he and McGrew became ''partners'' in farming operations till McGrew accumulated enough to buy the land in question. During all this time he made his home with the Littrells, but, for the most part, especially in later years, his farming operations were on his own land and were his independent business. He was strong both of mind and body, transacted all his own business, depended on no one in his business affairs, was self-willed and self-reliant. If there was any difference, the Littrells were reliant on him for advice and direction in business matters. It was well said in Spurr v. Spurr, 285 Mo. 163, 226 S. W. 35, 39: ''Neither the long-continued association and friendship of Spurr and Morse, nor the many intimate personal services rendered the former by the latter, nor their business relations, whether considered singly or conjunctively, was sufficient to put upon the contestees the burden of showing

1196

that the will was not the result of Morse's undue influence. Page on Wills, sec. 416 et seq., and cases cited." [Campbell v. Carlisle, 162 Mo. 634, 647, 63 S. W. 701; Knadler v. Stelzer, 323 Mo. 499, 19 S. W. (2d) 1054, 1059.] In Campbell's case, supra, the court quoted with approval from In re Gleespin's Will, 26 N. J. Eq. 523: "Influence gained by kindness and affection will not be regarded as 'undue' if no imposition or fraud be practiced, even though it induce the testator to make an unequal and unjust disposition of his property in favor of those who have contributed to his comfort and ministered to his wants, if such disposition is voluntarily made." ▮ The presumption of undue influence arising from confidential relations which invalidates a will or deed of gift must not be confused with the influence arising from gratitude, affection, or even a desire to gratify the wishes of one beloved. [Van Raalte v. Graff, 299 Mo. 513, 527, 528, 253 S. W. 220.] Most of the cases cited on this question of undue influence and fiduciary relations involve wills rather than deeds, but the law as to will is equally applicable to deeds of gift. [Cadwallader v. West, 48 Mo. 483, 492, 494; Boggess v. Boggess, 127 Mo. 305, 29 S. W. 1018; Masterson v. Sheahan (Mo.), 186 S. W. 524, 526.] The question of undue influence, either actual or presumptive, was rightly ruled for the defendants.

▮ The deeds in question express the consideration of "One Dollar and other good and valuable considerations" paid to the grantor and it is conceded that same have no other consideration than love and affection—a good as distinguished from a valuable consideration. Plaintiff asserts that love, affection and gratitude will not support a deed when made to grantees not related to the grantor by blood or marriage. We do not think this is the law. The owner of land may give it away to a stranger, as well as sell it to him, and consummate the gift or sale by deed. [Blackiston v. Russell, 328 Mo. 1164, 44 S. W. (2d) 22, 27; Masterson v. Sheahan (Mo.), 186 S. W. 524, 526; Gregory v. Gregory (Ill.), 154 N. E. 149.] In 2 Tiffany on Real Property, page 1624, the law is stated: "In other words, the owner of land has the same right to make a *gift* thereof to another person as he has to sell it, and the only persons who can question the validity of the conveyance for want of consideration are creditors who may thereby lose the means of satisfying their demands." In Cadwallader v. West, 48 Mo. 483, 492, this court said: "Of course Cadwallader was at liberty to give away his valuable lands if that was his pleasure." ▮ The consideration expressed in deeds is open to explanation by parol evidence or otherwise in proper cases, but this cannot be allowed for the purpose of defeating the operative or granting clause of the conveyance. [Chambers v. Chambers, 227 Mo. 262, 287, 127 S. W. 86; Wells v. Kuhn (Mo.), 221 S. W. 19; Weiss v. Heitkamp, 127 Mo. 23, 29 S. W. 709.]

▮ Nor can we agree to plaintiff's contention that in a gift of

land consummated by the execution and delivery of a deed, the gift is not complete and valid unless there is at the same time a delivery of actual possession of the land to the grantees. That is required in a parol gift of personal property, but not so as to land. The execution and delivery of the deed dispenses with the old ceremony of livery of seizin.

We will next consider the question of the mental capacity of the grantor, Moses McGrew, to make the deeds in question. At the same time the deeds were executed, and as part of the same transaction, Moses McGrew made and executed a will. The will makes the same disposition of the real estate as does the deeds and in addition thereto makes disposition of his personal property. The validity of the will is not drawn in question by this suit, but it is conceded that the same rule as to mental capacity applies to the grantor of a deed of gift as to the testator of a will. [Jones v. Thomas, 218 Mo. 508, 539, 117 S. W. 1177; Hershey v. Horton, 322 Mo. 484, 15 S. W. (2d) 801, 806.] The evidence clearly shows that up to within a few days of the making of these deeds, all McGrew's mental and physical powers remained unimpaired. He was then sixty-seven years of age. His sickness began three or four days before he was taken to a hospital in Moberly, where the deeds and will were executed and where he died the same day. McGrew was of a stoical nature and did not call a doctor very promptly. He was found to be suffering from a ruptured appendix and when he reached the hospital the examination disclosed such conditions that an operation was not deemed advisable. He was told of his serious physical condition and it is probable that he became convinced that he might not live very long. After being at the hospital some four hours and about eight o'clock in the morning, he requested Aubrey Skinner, husband of defendant Vivian Skinner, who had accompanied him to the hospital, to call Judge Willard P. Cave, a prominent lawyer at Moberly, and to tell him he wanted to see him on business at the hospital. McGrew did this of his own volition and without suggestion and neither Aubrey Skinner nor Judge Cave was informed of the nature of the business to be transacted. McGrew knew Judge Cave by reputation at least and knew that he had fixed up some deeds for Watts Littrell before his death. Judge Cave testified that when he reached the hospital McGrew informed him as to his property and that he wanted to make a conveyance of same to the defendants and gave as a reason that the Littrells had always been his friends, had provided him a home and helped him in many ways. At Judge Cave's suggestion all persons left the room while he and McGrew talked over this matter. Judge Cave's evidence is that while McGrew was a very sick man and suffering at the time, yet he was rational and cool and deliberate; that he had clear ideas of what he wanted to do and gave him definite directions as to how he wanted to dispose of his property; that Mc-

Grew had in mind the conveying of his property by deeds, but when he spoke of his personal property, Judge Cave suggested that it would be best to do that by making a will, and that is why the will and deeds were both made. After talking the matter over with McGrew, Judge Cave made some memoranda and went first to an abstract office to ascertain the correct description of the land, and then to his office, where the deeds and will were prepared. He then returned to the hospital, read the papers over to McGrew carefully, saw to it that he understood the same and that they carried out his wishes. There is no reason or suggestion that Judge Cave was actuated by any other motive than to conscientiously assist McGrew in carrying out his wishes in this matter, and according to his evidence these written instruments were the product of McGrew's mind, uninfluenced and unaided by anyone except himself. Aubrey Skinner and perhaps one or two of the other defendants may have known or surmised in a general way what was going on, but that is all. After the deeds and will were ready for execution, Dr. F. L. McCormick, the doctor in charge of the hospital, and his wife were called in, the documents read over and signed by McGrew, and his signature witnessed by them. Their evidence fully corroborates that of Judge Cave, including the fact that McGrew was of sound mind and knew and understood the contents and the nature and effect of the documents he signed and was executing. The deeds bear the acknowledgment by Judge Cave as notary public. McGrew came to the hospital about four o'clock A. M., the deeds and will were executed between ten and eleven o'clock A. M., and he died at two-thirty o'clock P. M. The doctor who attended McGrew three or four days before he came to the hospital and who was there with him till about seven or eight o'clock in the morning, testified that his mentality was up to the standard required for making wills and deeds of gift. Another doctor, who knew McGrew and casually came to the hospital just after the deeds were executed and saw and talked to him, testified to his being of sound mind. A careful reading of the record discloses that the disinterested persons, who were in the best position to know the mental condition of the grantor at the time the deeds were executed, testified to his mental soundness. The strongest evidence to the contrary is based on the hospital record. This record seems to have been carefully and accurately made by the nurses in charge and the record of the pulse beats and respiration shows a weak and very abnormal physical condition of the patient. Based on this hospital record, one physician, qualified as an expert, gave it as his opinion that the patient was not of sound mind in the legal sense at the time the deeds were executed, but said that a doctor who actually observed and talked to him would be better able to judge. Another expert said that he would not venture an opinion on that basis alone. Without going further into detail, we will say that a careful consideration of all the evi-

dence convinces us that, notwithstanding the grantor's bad physical condition culminating in his death four hours after the deeds and will were executed, the trial judge was correct in finding that the deeds should not be declared void for want of mental capacity of the grantor. The fact that the grantor believed that he would probably die in a short time did not of itself deprive him of the power to convey his property by deeds duly executed and delivered. The circumstances of this case deprive plaintiff of much of the force of the argument that the will and deeds are so unjust and unnatural in disinheriting plaintiff, his child, in favor of strangers, as to indicate a disordered and impaired mind. Here the grantor had never seen plaintiff, was forced to marry her mother against his will, and had never lived with the mother or supported the child. He did not even know whether plaintiff was living or dead. His statement to Judge Cave that he had no children was merely in keeping with the fact that he had chosen long ago to blot out his past life and had continuously represented that he had never been married and had no children. Whether right or wrong, he was merely following the course he had been following during all these years.

In this connection plaintiff takes the position that Judge Cave, whose evidence strongly supports defendants' contentions as to grantor's mental capacity, the want of any undue influence, and that the deeds were delivered, was an incompetent witness for the reason that an attorney cannot disclose confidential communications with his client. We do not think the case of Goodman v. Griffith, 238 Mo. 706, 142 S. W. 259, relied on by plaintiff, sustains this contention. That case expressly leaves this question undecided as being unnecessary. On the contrary, this court in Canty v. Halpin, 294 Mo. 96, 242 S. W. 94, 96, gave this question full consideration and ruled such witness and his evidence to be competent. [See, also, Thompson v. Ish, 99 Mo. 160, 176, 12 S. W. 510.] Objection is also made to the competency of some evidence given by defendants as being in violation of Section 1723, Revised Statutes 1929, disqualifying one party to the controversy when the other party is dead, but the evidence objected to is of so little importance in this equity case that it may well be disregarded without changing the result. Courts do not reverse for immaterial errors.

It is next insisted that the deeds are void for want of delivery by grantor during his lifetime. There is no question but that such delivery is essential and no citation of authorities is necessary. The question here is one of fact rather than of law. The essentials of a delivery of a deed are, the parting of the possession and control of the same by the grantor and the putting of such possession and control in the hands of the grantees, or someone for them, with the intent to pass title from grantor to the grantees. The intent to pass title is here, and generally, the crucial point. [Coles v. Bedford, 289

1200

Mo. 97, 232 S. W. 728; Dallas v. McNutt, 297 Mo. 535, 249 S. W. 35; Delaney v. Light (Mo.), 263 S. W. 813.] The testimony of Judge Cave on this point is that he knew and considered it his professional duty in aiding and advising McGrew as to transferring title of his property to the defendants, to inform him that a delivery of the deeds was essential to their validity, and that he did so. He said he explained to McGrew that delivery of the will was not essential, as that took effect only at his death, but that as to the deeds, they must be delivered and the title pass at once in order to be valid. McGrew fully understood this, if he understood the transaction at all, and by his acts, if not words, he assented thereto. After the deeds were completely executed and acknowledged, Judge Cave says that McGrew either handed the same directly to Aubrey Skinner or to him and he to Skinner. Skinner took charge of the deeds and in three or four days put them of record. Judge Cave testified: "These deeds were finished up and delivered. He either handed them to him (Skinner) or else he handed them back to me and told me to give it to him; but they were delivered right at the time—I explained to him the necessity. I said, 'As far as the will is concerned there is no such thing as delivering the will;' but I said the deed had to be delivered to pass title. I told him about that because I thought it was my duty to do that. Aubrey Skinner and some of the folks, I think, were there. The papers were delivered right then. Those papers were delivered to Aubrey Skinner in my presence. The fact is I was there and told him it had to be delivered." This evidence was corroborated by Aubrey Skinner. While Judge Cave could not remember in detail everything that was said and done, yet in view of the fact that he knew and fully understood the necessity of the delivery of the deeds and what was necessary to constitute delivery, his positive evidence that same were delivered in his presence leaves no doubt on that subject. In view of what was said and done as to the purpose and effect of delivering the deeds, the intent of the grantor to pass title by delivery of the deeds cannot be doubted.

Acceptance of a deed by the grantees is also necessary to its validity, but where the same is beneficial to the grantees, an acceptance will be presumed in the absence of any evidence showing a rejection of same (Chambers v. Chambers, 227 Mo. 262, 264, 127 S. W. 86; Whitaker v. Whitaker, 175 Mo. 1, 9, 74 S. W. 1029), and this is especially true in case of a voluntary deed of gift. [Burkey v. Burkey (Mo.), 175 S. W. 623, 624; Schooler v. Schooler, 258 Mo. 83, 92, 167 S. W. 444.] The acceptance may be after the death of the grantor and may be proven by the circumstances. [Burkey v. Burkey (Mo.), 175 S. W. 623; Allen v. DeGroodt, 105 Mo. 442, 449, 16 S. W. 494.] The fact that defendants are resisting this suit shows an acceptance of the deeds.

What we have said as to grantor's knowledge of the purpose and effect of the delivery of these deeds in passing title largely disposes of plaintiff's contention that the deeds were testamentary in character and not intended by grantor to take effect till after his death. Grantor was told and it was explained that the purpose and effect of deeds when delivered was to pass title at once and that the will would only take effect after death. Plaintiff's argument is that as McGrew executed the deeds and a will at the same time and as part of a single transaction, the deeds and the will must be read together and the same testamentary character given to the deeds as to the will. [White v. Reading, 293 Mo. 347, 239 S. W. 90, is cited as so holding.] We do not so read it. In that case the testator in his will referred to and made part of his will certain deeds executed by him at the same time. These deeds recited that they were not to take effect till the death of the grantor and on their face were testamentary in character. No such facts appear here. Where a person disposes of his property both by deed and will executed at the same time, in the absence of any explanation, there would be reason for holding that as the will can take effect only at the death of the testator, it must have been that such testator had the same intent with reference to the deeds; but the evidence of Judge Cave here is that McGrew had in mind the transfer of his property by deeds, and it was only because of Judge Cave's suggestion that a will would be necessary to dispose of the personal property that the will was prepared and executed in addition to the deeds. Just why Judge Cave included in the will the land that was being transferred by the deeds is conjectural, but the will was his suggestion and not McGrew's. The deeds were complete in themselves and the fact that a will was executed at Judge Cave's suggestion in order to dispose of the personal property cannot be held to show, in the face of the evidence to the contrary, that the deeds were intended to be testamentary in character. What is said in Knadler v. Stelzer, 323 Mo. 499, 19 S. W. (2d) 1054, 1060, is applicable here, to-wit: "The extraordinary preamble and some other of the legalistic sophistications of the contract are the only features of the evidence that have given us any concern. A careful consideration of the record as a whole, however, has satisfied us that Knadler merely told his attorney that he wanted to give his property to Mrs. Stelzer, and directed him to prepare such papers as were necessary to accomplish that purpose; that being true, the fact that the gift was effected through the similitude of a highly embellished contract is of no consequence."

The result is that the judgment should be affirmed and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* absent.